1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LUCIOUS WILSON,                          Case No.  1:23-cv-00023-HBK (PC)

12              Plaintiff,                     ORDER DENYING DEFENDANTS'
                                              MOTION TO DISMISS WITHOUT
13        v.                                   PREJUDICE[1]

14   BUCATO, J. FLORES, and C.                 (Doc. No.  15)
     HUCKLEBERRY,
15                                             ORDER REFERRING CASE TO EARLY
              Defendants                      ADR AND STAYING CASE
16
                                              OPT OUT DATE: FEBRUARY 9, 2024
17

18

19

20         Pending before the Court is Defendants Bucato, Flores, and Huckleberry's Motion to

21   Dismiss, filed on August 16, 2023.  (Doc. No. 15, "Motion").  Defendants seek dismissal of

22   Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*Id*.).  Plaintiff filed

23   an Opposition (Doc. No. 19), and Defendants filed a Reply (Doc. No. 20).  For the reasons set

24   forth below, the undersigned denies Defendants' Motion to Dismiss without prejudice.

25         ////

26   _____

27   [1] This motion was referred by the district court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule
     302(a).  Denial of a motion to dismiss without prejudice is not a dispositive motion requiring submission
28   of a findings and recommendation to the district judge. *See Florence v. Stanback*, 607 F. Supp. 2d 1119,
     1121 (C.D. Cal. 2009).

1

**BACKGROUND**

2

**A.  Procedural History and Summary of Complaint**

3

Plaintiff initiated this action by filing a prisoner civil rights complaint against Defendants

4  Bucato, Flores, Huckleberry, and C. Pfeiffer (collectively "Defendants"), alleging violation of the

5  Eighth Amendment.  (Doc. No. 1 at 3).  On an unspecified date, Plaintiff was sprayed in the face

6  with oleoresin capsicum spray ("O.C. spray").  (*Id*.).  Despite his requests to decontaminate and

7  see medical staff, Plaintiff was not permitted to decontaminate from the O.C. spray for more than

8  6.5 hours while being kept in a holding cage.  (*Id*.).  As a result, Plaintiff suffered severe pain,

9  temporary blindness, chemical keratitis[2], and sensitivity to light.  (*Id*.).  Plaintiff underwent two

10  "non-invasive procedures" to remedy his eye problems after being seen by three specialists.  (*Id*.).

11

As relief, Plaintiff seeks $75,000 in compensatory damages and unspecified punitive

12  damages.  (*Id*. at 6).

13

On May 2, 2023, the Court screened Plaintiff's Complaint and found that it stated an

14  Eighth Amendment excessive use of force claim against Defendants Bucato, Flores, and

15  Huckleberry, but no other claims.  (Doc. No. 9 at 1).  Plaintiff subsequently filed a Notice to

16  Proceed on his cognizable claims, and voluntarily dismissed Defendant Pfeiffer.  (Doc. No. 10 at

17  1-2).  After Defendants were served, they filed the instant Motion to Dismiss.  (Doc. No. 15).

18

**APPLICABLE LAW AND ANALYSIS**

19

**A.  Applicable Law**

20

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "tests the

21  legal sufficiency of a claim."  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir.

22  2011).  Dismissal for failure to state a claim is proper if there is a "lack of a cognizable legal

23  theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Id*.; *see also*

24

_____

25  [2] The Court takes judicial notice of the fact that keratitis is a condition involving swelling of the corneas.
*See* https://www.mayoclinic.org/diseases-conditions/keratitis/symptoms-causes/syc-20374110 (last visited

26  December 6, 2023).  Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are
"not subject to reasonable dispute" because they are either "generally known within the trial court's

27  territorial jurisdiction," or they "can be accurately and readily determined from sources whose accuracy
cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The Court may take judicial notice on its own or

28  at the request of any party.  *Id*. 201(c).

2

1   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (to survive a motion to dismiss, the

2   complaint must have sufficient facts to state a facially plausible claim to relief).  In deciding a

3   motion under Rule 12(b)(6), the court accepts as true all well-pled factual allegations in the

4   complaint and determines whether the factual allegations are sufficient to state a right to relief

5   above the speculative level.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Nw. Envtl. Def. Ctr.*

6   *v. Brown*, 640 F.3d 1063, 1070 (9th Cir. 2011) (court accepts as true all material allegations in the

7   complaint, as well as any reasonable inferences to be drawn from them).  Where a motion to

8   dismiss is granted, a district court must decide whether to grant leave to amend.  Courts are

9   instructed to apply Rule 15 with extreme liberality.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316

10  F.3d 1048, 1051 (9th Cir. 2003) (citations omitted); *Winebarger v. Pennsylvania Higher Educ.*

11  *Assistance Agency*, 411 F. Supp. 3d 1070, 1082 (C.D. Cal. 2019).  Only where leave to amend

12  would be futile, because "the allegation of other facts consistent with the challenged pleading

13  could not possibly cure the deficiency," should leave to amend be denied.  *DeSoto v. Yellow*

14  *Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

15          **B.  Excessive Force**

16          Prison officials who use excessive force against an inmate violate his Eighth Amendment

17  right to be free from cruel and unusual punishment.  *Farmer v. Brennan*, 511 U.S. 825, 832

18  (1994); *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002).  "[W]henever prison officials stand

19  accused of using excessive physical force in violation of the [Eighth Amendment], the core

20  judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore

21  discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6-7

22  (1992).  When determining whether the force was excessive, the court looks to the "extent of

23  injury suffered by an inmate . . . the need for application of force, the relationship between that

24  need and the amount of force used, the threat 'reasonably perceived by the responsible officials,'

25  and 'any efforts made to temper the severity of a forceful response.'"  *Id*. at 7 (quoting *Whitley v.*

26  *Albers*, 475 U.S. 312, 321 (1986)).  While *de minimis* uses of physical force generally do not

27  implicate the Eighth Amendment, significant injury need not be evident in the context of an

28  excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to

3

1    cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9.

2         "With regard to the use of pepper spray, the Ninth Circuit has concluded that the use of

3    pepper spray 'may be reasonable as a general policy to bring an arrestee under control, but in a

4    situation in which an arrestee surrenders and is rendered helpless, any reasonable officer would

5    know that a continued use of the weapon or a refusal without cause to alleviate its harmful effects

6    constitutes excessive force.'" *Pinkston v. Fierro*, 2006 WL 3147685, at *6 (E.D. Cal. Nov. 1,

7    2006) (citing *See LaLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000)), *report and*

8    *recommendation adopted*, 2007 WL 1365407 (E.D. Cal. May 9, 2007), *aff'd*, 315 F. App'x 628

9    (9th Cir. 2009); *see also Headwaters Forrest Def. v. Cnty. of Humboldt*, 276 F.3d 1125, 1130-31

10   (9th Cir. 2002) ("[I]t would have been clear to any reasonable officer that defendants' refusal to

11   wash out the protesters' eyes with water constituted excessive force under the circumstances.").[3]

12        Correctional officers have a duty to intercede when they observe excessive force being

13   applied to a prisoner by a fellow officer and have a reasonable opportunity to do intervene.  *See*

14   *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) ("[A] prison official can violate a

15   prisoner's Eighth Amendment rights by failing to intervene."); *Est. of Silva v. City of San Diego*,

16   2020 WL 6946011, at *11 (S.D. Cal. Nov. 25, 2020) (noting that the duty to intercede applies to

17   correctional officers) (*citing Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000)

18   ("[P]olice officers have a duty to intercede when their fellow officers violate the constitutional

19   right of a suspect or other citizen.")); *Hardney v. Diaz*, 2021 WL 876991, at *4 (E.D. Cal. Mar. 9,

20   2021), *report and recommendation adopted*, 2021 WL 2365061 (E.D. Cal. June 9, 2021)

21   ("Although law enforcement officials, such as police officers and correctional officers, may be

22   held liable for failure to intercede when fellow officers violate the constitutional rights of a citizen

23   or prisoner, liability attaches only if the officer in question had the opportunity to intercede.").

24        Where a correctional officer fails to intercede in an excessive use of force by a fellow

25   officer, "the constitutional right violated by the passive defendant is analytically the same as the

26

27   ――――――――――――――
     [3] The standards applicable to use of force claims brought under the Fourth and Eighth Amendments are
     distinct.  As evident by the cases cited here, however, judges in this District routinely apply principles
28   derived from Fourth Amendment case law to Eighth Amendment claims filed by prisoners.

right violated by the person who strikes the blows." *McDowell v. Kern Valley State Prison*, 2022 WL 20210453, at *4 (E.D. Cal. May 24, 2022) (citing *United States v. Koon*, 34 F.3d 1416, 1447, n.25 (9th Cir. 1994), *aff'd in part, rev'd in part*, 518 U.S. 81 (1996). "[T]he core judicial inquiry" in such cases is whether the prison officer maliciously and sadistically failed to intervene to cause harm. *Stevenson v. Holland*, 2020 WL 264422, at *17 (E.D. Cal. Jan. 17, 2020) (quoting *Stevenson v. Holland*, 2017 WL 2958731, at *13 (E.D. Cal. July 11, 2017).

In their Motion, Defendants contend that because none of them applied the initial use of force to Plaintiff, they cannot be held liable under the Eighth Amendment for excessive use of force. (Doc. No. 15-1 at 4). As the cases cited above reflect, federal courts do not recognize a categorical distinction between officers who apply unconstitutional levels of force, and those who permit unconstitutional force to be inflicted despite having the opportunity to intervene. Whether styled as an Eighth Amendment "excessive use of force," or as an analytically identical Eighth Amendment "failure to intercede," Defendants can be held liable if they had a reasonable opportunity to prevent harm to Plaintiff resulting from a fellow officer's (or their own) application of force.

Here, the Complaint alleges facts showing Defendants failed to intervene for six and a half hours knowing that Plaintiff was suffering the effects of O.C. spray.[4] Plaintiff advised Defendant Bucato that his eyes hurt, burned, and he had difficulty seeing, but Bucato took no action in response. (Doc. No. 1 at 3). While Plaintiff has being held in the holding cage, Plaintiff was asked to sign a property sheet and Defendant Flores notated "cannot see due to P.S.," meaning pepper spray, and he did not allow Plaintiff to flush his eyes or call for a medical evaluation. (*Id*.). Plaintiff specifically asked Defendant Huckleberry to be moved to a wet cell so that he could properly decontaminate, but Huckleberry denied the request and did not provide any other

---

[4] There is no evidence in the record specifically reflecting Defendants' knowledge of the CDCR Department Operations Manual ("DOM"). However, the Court takes judicial notice of the fact that the DOM sets forth detailed procedures regarding how to decontaminate an inmate after application of a chemical agent (§ 51020.15.4) and from oleoresin capsicum specifically (§ 51020.15.5). Section 51020.15.4 states, *inter alia*, "Any inmate exposed to a chemical agent shall be afforded an opportunity to decontaminate as soon as practical."

1   means for Plaintiff to decontaminate.  (*Id*.).  As a result of the Defendants' inactions, Plaintiff

2   suffered severe pain, temporary blindness, and swelling of the cornea.  (*Id*.).

3          The fact that Plaintiff was subsequently treated by specialists on multiple occasions and

4   underwent two procedures to treat his eye injury supports a finding that the failure to intercede

5   was unreasonable.  *See Hudson*, 503 U.S. at 7 (extent of injury is one factor in determining

6   whether force applied was reasonable).  Nor do the facts reflect that the Defendants' failure to

7   intercede was justified by the need to maintain or restore institutional order; indeed, Plaintiff was

8   temporarily blind, posing no apparent danger to others, and was sufficiently compliant that prison

9   staff approached him with paperwork for his signature.  (*See* Doc. No. 1 at 3).  Based on the facts

10  alleged, Defendants' failure to assist him was not plausibly justified by any safety threat.

11  Liberally construing Plaintiff's Complaint, the Court thus reasonably infers that Defendants'

12  failure to decontaminate or call medical assistance for Plaintiff for 6.5 hours, despite having a

13  reasonable opportunity to do so, was done maliciously or sadistically to cause Plaintiff harm.  *See*

14  *Stevenson*, 2020 WL 264422 at 17.

15         **C.  Eighth Amendment Deliberate Medical Indifference**

16         Although the Court's May 2, 2023 screening order only analyzed Plaintiff's allegations as

17  alleging an excessive force cause of action, upon further review the Court finds that liberally

18  construed, the same allegations adequately also allege an Eighth Amendment claim for deliberate

19  medical indifference.

20         Deliberate indifference to the serious medical needs of an incarcerated person constitutes

21  cruel and unusual punishment in violation of the Eighth Amendment.  *See Estelle v. Gamble*, 429

22  U.S. 97, 104 (1976).  To maintain an Eighth Amendment claim premised on prison medical

23  treatment, the prisoner must show that officials were deliberately indifferent to his medical needs.

24  A finding of "deliberate indifference" involves an examination of two elements: the seriousness

25  of the plaintiff's medical need (determined objectively) and the nature of the defendant's response

26  (determined by defendant's subjective state of mind).  *See McGuckin v. Smith*, 974 F.2d 1050,

27  1059 (9th Cir.1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d

28  1133, 1136 (9th Cir.1997) (en banc).  On the objective prong, a "serious" medical need exists if

the failure to treat "could result in further significant injury" or the "unnecessary and wanton inflection of pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).  On the subjective prong, a prison official must know of and disregard a serious risk of harm.  *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).  Such indifference may appear when a prison official intentionally denies or delays care, or intentionally interferes with treatment once prescribed.  *Estelle,* 429 U.S. at 104-05.

If, however, the official failed to recognize a risk to the plaintiff—that is, the official "*should* have been aware" of a risk, but in fact was not—the official has not violated the Eighth Amendment.  *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 668 (9th Cir. 2021) (emphasis in original).  It is only when an official both <u>recognizes</u> and <u>disregards</u> a risk of substantial harm that a claim for deliberate indifference exists.  *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc).  A plaintiff must also demonstrate harm from the official's conduct.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  And the defendant's actions must have been both an actual and proximate cause of this harm.  *Lemire*, 726 F.3d at 1074.

"[T]he failure to provide an inmate with prompt decontamination procedures after the use of pepper spray can establish a claim for deliberate indifference."  *Garcia v. Pope*, 2020 WL 1068239, at *2 (D. Or. Mar. 5, 2020), *aff'd*, 841 F. App'x 28 (9th Cir. 2021) (*citing Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002)).  In *Clement*, the plaintiffs asserted claims of deliberate indifference based on their exposure to OC spray that was used by prison officers to break up a fight between other inmates.  298 F.3d at 901-902.  The plaintiffs alleged that officers denied their "repeated requests for attention" despite the fact they were "complaining of breathing problems, pain, and asthma attacks" as well as "coughing, gagging, or choking."  *Id*. at 905.  In reviewing the record, the Ninth Circuit noted that the "plaintiffs' submissions document the painful effects of pepper spray," and observed that "[f]our hours after the incident, officials finally escorted the bystander inmates out of their cells for showers."  *Id*. at 902.  On those facts, the court reversed summary judgment for the defendants, recognizing that "the prisoners may be able to show that the defendants were subjectively aware of the risk of serious injury when they denied showers and medical attention for the inmates for the 4 hour period."  *Id*. at 905.

In *Walsh v. Gower*, the court denied summary judgment on a claim of deliberate indifference asserted by a plaintiff who had been denied a decontamination shower for two days following an exposure to OC spray.  2020 WL 1149912, at *4 (D. Or. Mar. 9, 2020).  The court found genuine issues of material fact existed as to whether the defendant officer ignored the plaintiff's requests for help where the plaintiff alleged that he had banged on his cell window stating, "I am burning, I can't breathe and I need a shower to decontaminate." *Id*. at 2.  The court also found "an issue of fact as to whether Plaintiff had a serious medical need" where he submitted evidence that he experienced "pain and breathing problems along with choking, gagging, burning, and itching throughout the night." *Id*. at *5.

Turning to the instant case, while a brief exposure to pepper spray resulting in no subsequent injury does not constitute a serious medical need under the Eighth Amendment, prolonged exposure can represent a serious medical condition satisfying the objective prong of the deliberate medical indifference analysis.  "[B]rief delays in receiving care after being pepper sprayed are insufficient to state a claim for medical deliberate indifference." *Candler v. Prather*, 2020 WL 2193264, at *4 (E.D. Cal. May 6, 2020), *report and recommendation adopted*, 2020 WL 4349823 (E.D. Cal. July 29, 2020), *aff'd*, 2021 WL 6066994 (9th Cir. Dec. 20, 2021) (a plaintiff who alleged deliberate indifference based on a lapse of 20 minutes between the deployment of pepper spray and his decontamination shower could not prevail on his claim of deliberate indifference especially where he alleged no harm "other than the obvious discomfort which attends all deployment of pepper spray"); *see Allen*, 253 F. App'x at 660 (assuming the truth of the plaintiff's allegations that "the spray caused him to cough, choke, and gag, and caused burning in his eyes" and granting summary judgment for the defendants because there was "no evidence ... [of] actual injury, other than the transitory effects of the pepper spray, or that any delay in responding to his requests caused further injury"); *Silva v. Walker,* 2020 WL 1906895, at *1 (W.D. Wash. Feb. 25, 2020), *report and recommendation adopted,* 2020 WL 1904067 (W.D. Wash. Apr. 17, 2020) 2020 WL 1906895, at *5 (noting that "pepper spray ordinarily does not create a serious medical need because it causes only temporary discomfort" while acknowledging that "the Ninth Circuit has recognized that the failure of prison officials to properly

1   decontaminate a prisoner exposed to pepper spray can support a deliberate indifference claim

2   because of the effects of prolonged exposure to the chemical"); cf. *Cisneros v. Vangilder*, 2019

3   WL 285800, at *3 (N.D. Cal. Jan. 22, 2019) ("[e]ven though the transitory effects of pepper spray

4   might be insufficient to establish a serious medical need, Plaintiffs have produced evidence that

5   they suffered from the effects of the chemical exposure for several hours or even days").

6          Here, one hour and forty minutes had elapsed when Plaintiff advised Defendant Bucato

7   that his eyes burned, he was in pain, and was unable to see.  (Doc. No. 1 at 3).  The delay in

8   decontaminating Plaintiff was no longer brief, and at this point he presented a serious medical

9   condition where failure to treat him would result in the "unnecessary and wanton infliction of

10  pain."  *Colwell*, 763 F.3d at 1066.  Thus, the Complaint alleges facts sufficient to satisfy the

11  objective prong of the deliberate medical indifference analysis.

12         Turning to the subjective prong, Defendant Bucato was aware of Plaintiff's condition,

13  given that Plaintiff specifically told him he was in pain, his eyes burned, and he could not see

14  clearly.  (Doc. No. 1 at 3).  Accordingly, Defendant Bucato's failure either to provide Plaintiff the

15  means to decontaminate or call for medical assistance exhibited deliberate indifference to

16  Plaintiff's serious medical needs in violation of the Eighth Amendment.

17         Similarly, Defendant Flores knew that Plaintiff could not see as a result of the pepper

18  spray, (*see id*.), and that he was being held in a holding cage without running water, but

19  nevertheless failed to take any action permitting Plaintiff to decontaminate or call for medical aid.

20  Thus, the Complaint sets forth facts sufficient to state an Eighth Amendment deliberate medical

21  indifference claim against Defendant Flores.

22         As to Defendant Huckleberry, Plaintiff specifically requested he be transferred to a wet

23  cell so that he could decontaminate.  Thus, Huckleberry knew Plaintiff had not been properly

24  decontaminated and was still suffering from the effects of the O.C. spray, but nevertheless denied

25  Plaintiff's request and did not otherwise provide Plaintiff the means to decontaminate or call for

26  medical assistance.  The Complaint therefore adequately alleges a claim of deliberate medical

27  indifference under the Eighth Amendment as to Defendant Huckleberry.

28         ////

**CONCLUSION**

Liberally construing Plaintiff's Complaint and resolving all doubts in favor of Plaintiff as the non-moving party, the Court finds that Plaintiff adequately alleges Eighth Amendment claims for failure to intervene/excessive force and deliberate medical indifference as to Defendants Bucato, Flores, and Huckleberry.  For the reasons set forth above, the fact that Defendants did not apply force to Plaintiff is insufficient to establish that they are not liable for violations of the Eighth Amendment.  The Court will therefore deny Defendants' motion without prejudice.

Instead of directing Defendants to answer Plaintiff's Complaint, including the additional claims of deliberate medical indifference the Court finds cognizable by this Order, the Court will refer this case to early Alternative Dispute Resolution (ADR) so the parties may to try resolve this case.  *See also* Local Rule 270.  In appropriate cases, defense counsel from the California Attorney General's Office have agreed to participate in early ADR.  No claims, defenses, or objections are waived by the parties' participation.

Attempting to resolve this matter early through settlement now would save the parties the time and expense of engaging in lengthy and costly discovery and preparing substantive dispositive motions.  The Court therefore will STAY this action to allow the parties an opportunity to investigate Plaintiff's claims, meet and confer, and engage in settlement discussions, or agree to participate in an early settlement conference conducted by a magistrate judge.  If after further investigation of Plaintiff's claims and meeting and conferring, any party finds that a settlement conference would be a waste of resources, the party may opt out of the early settlement conference.

Accordingly, it is **ORDERED**:

1.  The Court **DENIES** Defendants' Motion to Dismiss (Doc. No. 15).

2.  This action will remain **STAYED until further order** to allow the parties an opportunity to settle their dispute.  Defendants, may, but are not required to file an answer during the stay period.  The parties shall not engage in formal discovery until the Court issues a Scheduling and Discovery Order.

3. **No later than February 9, 2024**, the parties shall file a notice if they object to proceeding to an early settlement conference or if they believe that settlement is not currently achievable.

4. If neither party has opted out of settlement by the expiration of the objection period, the Court will assign this matter by separate Order to a United States Magistrate Judge, other than the undersigned, for conducting the settlement conference.

5. If the parties reach a settlement prior to the settlement conference, they SHALL file a Notice of Settlement as required by Local Rule 160.

Dated:    December 7, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

11